No. 21-7283

_____

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

_____

## UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

## WILLIE SLOCUM, JR.,
Defendant-Appellant.

_____

**Appeal from the United States District Court
for the Southern District of West Virginia**

_____

## BRIEF OF APPELLANT

Erica Hashimoto, Director
*Counsel of Record*

Salvatore Mancina
*Supervising Attorney*

Emily Webb
Daniel Reid
*Student Counsel*

Georgetown University Law Center
Appellate Litigation Program
600 New Jersey Ave. NW, Suite 306
Washington, D.C.  20001
(202) 662-9555
sm3866@georgetown.edu

*Counsel for Appellant Willie Slocum,
Jr.*

November 14, 2022

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

STATEMENT OF JURISDICTION ......................................................... 1

STATEMENT OF THE ISSUES .............................................................. 3

STATEMENT OF THE CASE ................................................................. 4

   I.  MR. SLOCUM'S CRIMINAL CASE ..................................................... 4

     A.  The Indictment ......................................................................... 4

     B.  Trial ......................................................................................... 6

     C.  Sentencing and Direct Appeal ................................................ 8

   II.  MR. SLOCUM'S 28 U.S.C. § 2255 MOTION ...................................... 9

     A.  Initial § 2255 Motion .............................................................. 9

     B.  The Supreme Court Decides Rehaif While Mr. Slocum's § 2255 Motion is Pending .......................................................... 10

     C.  The District Court's Decision ............................................... 12

SUMMARY OF THE ARGUMENT ....................................................... 15

ARGUMENT ...................................................................................... 19

   I.  DEFENSE COUNSEL WAS INEFFECTIVE UNDER STRICKLAND IN FAILING TO RAISE A MERITORIOUS DOUBLE JEOPARDY CLAIM. ............. 19

     A.  Counsel's Failure to Raise a Braverman Claim Constitutes Deficient Performance. ........................................................ 19

     B.  Counsel's Failure to Object to the Multiplicitous Counts in the Indictment Prejudiced Mr. Slocum. ................................. 33

   II.  MR. SLOCUM'S § 922(G)(1) CONVICTIONS SHOULD BE VACATED BECAUSE THE INDICTMENT FAILED TO ALLEGE ALL ELEMENTS

NECESSARY TO CHARGE AN OFFENSE AND BECAUSE § 922(G)(1) VIOLATES HIS SECOND AMENDMENT RIGHTS. ........................................................ 37

    A.  Mr. Slocum's Indictment Failed to Allege Knowledge of Status and Therefore Failed to Charge an Offense under Rehaif. .............. 38

    B.  Mr. Slocum's Convictions under § 922(g)(1) Violate His Second Amendment Rights. .......................................................................... 46

CONCLUSION ......................................................................................... 47

STATEMENT REGARDING ORAL ARGUMENT ................................. 48

CERTIFICATE OF COMPLIANCE ........................................................ 50

CERTIFICATE OF SERVICE ................................................................. 51

# TABLE OF AUTHORITIES

## *Cases*

*Anders v. California*, 386 U.S. 738 (1967) ...............................33

*Ball v. United States*, 470 U.S. 856 (1985) .......................35, 36

*Blockburger v. United States*, 284 U.S. 299 (1932)..................21

*Blumenthal v. United States*, 332 U.S. 539 (1947) ................30

*Bobb v. United States*, 471 F.3d 491 (3d Cir. 2006)...............27

*Bousley v. United States*, 523 U.S. 614 (1998)..................39, 40

*Braverman v. United States*, 317 U.S. 49 (1942)........... passim

*Class v. United States*, 138 S. Ct. 798 (2018) ........................11

*Dickson v. Microsoft Corp.*, 309 F.3d 193 (4th Cir. 2002)......29

*Dunn v. United States*, 442 U.S. 100 (1979) ...........................42

*Gamble v. United States*, 139 S. Ct. 1960 (2019)...................20

*Games-Perez v. United States*, 571 U.S. 830 (2013) ..............41

*Greer v. United States*, 141 S. Ct. 2090 (2021) .................44, 45

*In re Winship*, 397 U.S. 358 (1970) ........................................42

*Jackson v. Leonardo*, 162 F.3d 81 (2d Cir. 1998) ............31, 36

*Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019).........................47

*Kotteakos v. United States*, 328 U.S. 750 (1946)...............28, 30

*MacDougall v. United States*, 790 F.2d 1135 (4th Cir. 1986)
........................................................................ 15, 20, 21, 23

*Maxwell v. United States*, 617 Fed. App'x. 470 (6th Cir. 2015)..............26

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022) .................................................................................. 46, 47

*Reed v. Ross*, 468 U.S. 1 (1984) .............................................................. 39

*Rehaif v. United States*, 139 S. Ct. 2191 (2019)............................. passim

*Russell v. United States*, 369 U.S. 749 (1962)........................................ 44

*Rutledge v. United States*, 517 U.S. 292 (1996) ..................................... 34

*Seabrooks v. United States*, 32 F.4th 1375 (11th Cir. 2022) .................. 39

*Strickland v. Washington*, 466 U.S. 668 (1984)........................... 3, 19, 34

*United States v. Banks*, 10 F.3d 1044 (4th Cir. 1993) ........................... 30

*United States v. Barronette*, 46 F.4th 177 (4th Cir. 2022)..................... 45

*United States v. Bolden*, 325 F.3d 471 (4th Cir. 2003) .................... 27, 32

*United States v. Broce*, 488 U.S. 563 (1989) ........................................ 26

*United States v. Cannady*, 924 F.3d 94 (4th Cir. 2019).................... 27, 30

*United States v. Carter,* 576 F.2d 1061 (3d Cir.1978) ........................... 43

*United States v. Carthorne*, 878 F.3d 458 (4th Cir. 2017).......... 19, 31, 32

*United States v. Colton*, 231 F.3d 890 (4th Cir. 2000)........................... 20

*United States v. Cooper*, 886 F.3d 146 (D.C. Cir. 2018) ....................... 22

*United States v. Dale*, 178 F.3d 429 (6th Cir. 1999) .............................. 27

*United States v. Daniels*, 973 F.2d 272 (4th Cir. 1992) ......................... 42

*United States v. Games-Perez*, 667 F.3d 1136 (10th Cir. 2012)............. 40

*United States v. Games-Perez*, 695 F.3d 1104 (10th Cir. 2012)............. 41

*United States v. Gomez-Pabon*, 911 F.2d 847 (1st Cir. 1990)........... 26, 32

*United States v. Grassi*, 616 F.2d 1295 (5th Cir.1980)........................... 28

iv

*United States v. Ivey*, 722 Fed. Appx. 336 (4th Cir. 2018)...............32, 33

*United States v. Jarvis,* 7 F.3d 404 (4th Cir. 1993) .................................28

*United States v. Johnson*, 130 F.3d 1420 (10th Cir. 1997)...................36

*United States v. Jones*, 403 F.3d 604 (8th Cir. 2005) ...........................35

*United States v. Jones*, 858 F.3d 221 (4th Cir. 2017) ............................24

*United States v. Ketchum*, 320 F.2d 3 (2d. Cir. 1963) ...........................36

*United States v. Kingrea*, 573 F.3d 186 (4th Cir. 2009) ..................42, 46

*United States v. Langford*, 946 F.2d 798 (11th Cir. 1991) ....................36

*United States v. Langley*, 62 F.3d 602 (4th Cir. 1995) ...........................40

*United States v. Leavis*, 853 F.2d 215 (4th Cir. 1988)............................21

*United States v. Lockhart*, 947 F.3d 187 (4th Cir. 2020)........................41

*United States v. Moore*, 666 F.3d 313 (4th Cir. 2012) .....................12, 47

*United States v. Polizzi*, 257 F.R.D. 33 (E.D.N.Y. 2009) .................36, 43

*United States v. Pollard*, 20 F.4th 1252 (9th Cir. 2021)........................41

*United States v. Powell*, 894 F.2d 895 (7th Cir. 1990)...............22, 26, 32

*United States v. Ragins*, 840 F.2d 1184 (4th Cir. 1988) .........................21

*United States v. Sellers*, 657 Fed. Appx. 145 (4th Cir. 2016) ...........34, 35

*United States v. Stewart*, 256 F.3d 231 (4th Cir. 2001)..........................21

*United States v. Urbanik*, 801 F.2d 692 (4th Cir. 1986)...................27, 32

*United States v. Werle*, 35 F.4th 1195 (9th Cir. 2022)............................40

*United States v. Young*, 989 F.3d 253 (4th Cir. 2021) ............................26

## Statutes

18 U.S.C. § 1512(b) .................................................................5

18 U.S.C. § 922(g) ......................................................... passim

18 U.S.C. § 924(a)(2) ................................................... 4, 5, 40

21 U.S.C. § 841(a)(1) ........................................................ 4, 5

21 U.S.C. § 846 ............................................................... passim

28 U.S.C. § 1291 ......................................................................1

28 U.S.C. § 1331 ......................................................................1

28 U.S.C. § 2253(a) .................................................................1

28 U.S.C. § 2253(c)(1)(B) .......................................................1

28 U.S.C. § 2255 ............................................................. passim

## Rules

Fed. R. App. P. 32(a)(7)(B) ..................................................50

Fed. R. App. P. 32(f) .............................................................50

Fed. R. App. P. 34(a) .............................................................48

Fed. R. App. P. 4(1)(B)(i) ........................................................1

Fed. R. Crim. P. 29 ...............................................................11

Fourth Circuit Local Rule 22(a)(2)(B) ...................................2

Fourth Circuit Local Rule 34(a) ...........................................48

## Constitutional Provisions

U.S. Const. amend. II..............................................................46

U.S. Const. amend. V ..............................................................20

## STATEMENT OF JURISDICTION

The district court had jurisdiction over Petitioner Willie Slocum, Jr.'s, 28 U.S.C. § 2255 motion pursuant to 28 U.S.C. § 1331. On August 20, 2021, the district court entered a final judgment dismissing Mr. Slocum's § 2255 motion and denying a certificate of appealability ("COA"). JA1571–1574, JA1575–1576.

Mr. Slocum timely filed a notice of appeal on September 3, 2021. JA1577; Fed. R. App. P. 4(1)(B)(i). Mr. Slocum filed an informal brief with this Court requesting it grant a COA. CA4 Dkt. 7. This Court granted a COA on one issue: whether Mr. Slocum's counsel was ineffective for failing to challenge Counts 1 and 2 of the second superseding indictment as multiplicitous in violation of the Double Jeopardy Clause. CA4 Dkt. 13 at 1-2; *see* 28 U.S.C. § 2253(c)(1)(B). This Court has appellate jurisdiction over that issue pursuant to 28 U.S.C. §§ 1291 & 2253(a).

This brief also addresses two other issues: (1) whether Mr. Slocum's two 18 U.S.C. § 922(g)(1) convictions violate *Rehaif v. United States*, 139 S. Ct. 2191 (2019), because the second superseding indictment failed to allege all of the essential elements for those charges and therefore does

not charge offenses against the United States; and (2) whether Mr. Slocum's § 922(g)(1) convictions violate his Second Amendment rights as guaranteed by the United States Constitution. Mr. Slocum's pro se request for a COA on these issues was denied, CA4 Dkt. 13 at 1–2, but now with the assistance of counsel, Mr. Slocum asks the Court to reconsider and expand the COA. A request to expand the COA is being submitted with this brief as authorized under Fourth Circuit Local Rule 22(a)(2)(B).

## STATEMENT OF THE ISSUES

1. Whether Mr. Slocum's counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984), for failing to challenge the second superseding indictment, Counts 1 and 2, as multiplicitous in violation of the Double Jeopardy Clause?

2. Whether Mr. Slocum's 18 U.S.C. § 922(g)(1) convictions violate *Rehaif v. United States*, 139 S. Ct. 2191 (2019), because the second superseding indictment failed to allege all of the essential elements for those charges and therefore does not charge offenses against the United States?

3. Whether Mr. Slocum's § 922(g)(1) convictions violate his Second Amendment rights as guaranteed by the United States Constitution?

# STATEMENT OF THE CASE

Mr. Slocum appeals the district court's denial of his § 2255 motion alleging, among other claims, ineffective assistance of counsel for failure to challenge the second superseding indictment, Counts 1 and 2, as multiplicitous in violation of the Double Jeopardy Clause. He also asks this Court to expand its COA to address (1) whether his convictions for possessing a firearm as a felon under § 922(g)(1) violate *Rehaif*, 139 S. Ct. 2191, and (2) whether his § 922(g)(1) convictions violate his Second Amendment rights.

## I.     MR. SLOCUM'S CRIMINAL CASE

### A. The Indictment

In October 2013, a federal grand jury charged Mr. Slocum with conspiracy to distribute "more than 100 grams of heroin" in violation of 21 U.S.C. §§ 841(a)(1) and 846. JA27. The grand jury later returned a superseding indictment, adding a count for possessing a firearm as a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). JA28–29. Subsequently, the grand jury issued a second superseding indictment adding three new charges. JA31–35. The five counts were: (1) conspiracy to "distribute more than one kilogram of heroin" in violation of § 841(a)(1) and § 846; (2) conspiracy to distribute "a quantity of oxycodone" in

violation of § 841(a)(1) and § 846; (3-4) two counts of possession of a firearm as a convicted felon in violation of § 922(g)(1) and § 924(a)(2); and (5) intimidation of a witness in violation of 18 U.S.C. § 1512(b).  JA31–35.

The Grand Jury charged the following in Counts 1 and 2:

(1) From before May 2012 through October 2013, at or near Charleston, Kanawha County, West Virginia, and within the Southern District of West Virginia and elsewhere, defendant WILLIE SLOCUM, JR., also known as "JAY," and other persons both known and unknown to the Grand Jury conspired to commit offenses in violation of Title 21, United States Code, Section 841(a)(1), that is, knowingly and intentionally to distribute more than one kilogram of heroin, a Schedule I controlled substance.
In violation of Title 21, United States Code, Section 846.

(2) From before May 2012 through October 2013, at or near Charleston, Kanawha County, West Virginia, and within the Southern District of West Virginia and elsewhere, defendant WILLIE SLOCUM, JR., also known as "JAY," and other persons both known and unknown to the Grand Jury conspired to commit offenses in violation of Title 21, United States Code, Section 841(a)(1), that is, knowingly and intentionally to distribute a quantity of oxycodone, also known as "Roxycodone," a Schedule II controlled substance.
In violation of Title 21, United States Code, Section 846.

JA31–32.  Counts 3 and 4 of the second superseding indictment alleged (1) that Mr. Slocum "knowingly possess[ed] a firearm," and (2) at that

time, Mr. Slocum "had been convicted" of crimes "punishable by imprisonment for a term exceeding one year." JA33–34.

## B. Trial

### 1. The Government's Opening Statement

At trial, the government opened by describing to the jury its understanding of the drug conspiracies alleged in Counts 1 and 2. The government asserted that Mr. Slocum came to West Virginia in 2012 and recruited "people to sell drugs for him." JA53. According to the government, these individuals were often drug addicts and would sell "heroin and [oxycodone] pills" for Mr. Slocum to support their addiction. JA54. The government alleged that these addicted individuals were supervised by others involved in the drug operation, who would "dol[e]" out drugs and "collect[] the money" for Mr. Slocum. JA55.

### 2. Trial Evidence and the Government's Closing Argument

The government presented evidence from sixteen witnesses over three days to support its case. Many of the government's witnesses testified that they, or someone they knew, sold both heroin and oxycodone for Mr. Slocum. *See*, *e.g.*, JA377–381, JA631, JA750–751. These witnesses explained how the alleged drug operation worked. According to the government's witnesses, Mr. Slocum and other members of the

alleged conspiracy would transport heroin and oxycodone from Detroit to West Virginia. JA423–427, JA465–466, JA513–518. The witnesses testified that Mr. Slocum or other members of the alleged conspiracy would then sell the drugs to a network of individuals who would both use the drugs and sell them to support their addiction. *See*, *e.g.*, JA377–381, JA631, JA745–746, JA751. They also testified that most of the drug transactions took place in and around Charleston, West Virginia. *See*, *e.g.*, JA505–506, JA627–631.

Many witnesses testified that because they sold drugs to support their own drug addiction, other members of the alleged conspiracy supervised them to make sure they were selling their drugs and making money. *See*, *e.g.*, JA329, JA345, JA380, JA410. These addicted individuals also identified Mr. Slocum in court and testified that they were acquainted with other members of the alleged drug operation, identifying them by photograph. *See*, *e.g.*, JA346, JA377, JA384, JA513.

The government summarized the evidence regarding the alleged "drug conspiracy" in its closing argument. JA843–844. The government argued that every witness, except for a police officer, "testified that they at one time or another purchased heroin and/or pills directly from the

defendant" and that the alleged drug operation had a "very clear method." JA843.

## C. Sentencing and Direct Appeal

The jury found Mr. Slocum guilty on each count. JA37–40. The district court sentenced Mr. Slocum to 30 years in prison for Count 1; 20 years for Count 2; 10 years for Count 3; 10 years for Count 4; and 20 years for Count 5. JA41. All sentences were set to run concurrently to Count 1, so Mr. Slocum received a total imprisonment sentence of 30 years. JA41, JA1001–1002. The court also required Mr. Slocum to pay a $100 special assessment for each of his convictions and a $5,000 fine. *See* JA44, 1003, 1560.

Mr. Slocum appealed, and his newly appointed counsel raised two sentencing challenges that are not relevant here.[1] Dkt. 151 at 2–4. This Court affirmed the district court's sentence in an unpublished opinion. *Id.* at 5–6. The Supreme Court denied Mr. Slocum's petition for a writ of certiorari. *See* Dkt. 162.

---

[1] Counsel argued that the district court had erred in calculating Mr. Slocum's criminal history category and had imposed a substantively unreasonable sentence. Dkt. 151 at 2.

## II.  MR. SLOCUM'S 28 U.S.C. § 2255 MOTION

### A. Initial § 2255 Motion

Mr. Slocum timely filed a § 2255 motion to vacate his sentence, raising twenty-one challenges to the validity of his conviction and sentence. *See* JA1008–1223. As relevant for this appeal, Mr. Slocum argued that his counsel provided ineffective assistance for failing to challenge the second superseding indictment as multiplicitous in violation of the Double Jeopardy Clause, causing prejudice and denying him a fair trial. JA1100–1112.

After the district court referred the case to a Magistrate Judge, Dkt. 166, the government filed an answer and motion to dismiss. JA1225–1252. The government argued that the conspiracies alleged in Counts 1 and 2 were different offenses because each required proof of a different controlled substance. *See* JA1236. The Magistrate Judge entered Proposed Findings and Recommendations ("First PF&R") advising the district court to deny Mr. Slocum's § 2255 motion and dismiss it with prejudice. JA1253–1318. The Magistrate Judge concluded that his counsel was not deficient for failing to raise a double jeopardy claim. JA1282. The Magistrate Judge agreed with the government that the existence of two controlled substances was enough, on its own, to

establish two conspiracies. JA1276–1277. In addition, the Magistrate Judge concluded that more than one conspiracy existed because the evidence showed that Mr. Slocum's conspiracy operations were "sprawling" and that his co-conspirators did not act "as part of an interdependent team." JA1280–1281.

Mr. Slocum filed timely objections to the First PF&R. JA1319–1349. He asserted that the double jeopardy analysis was incorrect because under *Braverman v. United States*, 317 U.S. 49 (1942), a single agreement to distribute two different controlled substances constitutes one conspiracy offense. JA1324–1325.

## B. The Supreme Court Decides *Rehaif* While Mr. Slocum's § 2255 Motion is Pending

Before the district court ruled on the First PF&R, the Supreme Court decided *Rehaif*, holding that to convict a defendant under § 922(g), the government "must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." 139 S. Ct. at 2194. Mr. Slocum filed several motions seeking to amend his § 2255 motion to include a *Rehaif* claim because the government did not present the knowledge-of-status element to the grand jury to establish probable cause for it to return an indictment. *See*

JA1350–1354, JA1355–1358. Mr. Slocum argued that because the government did not allege the knowledge-of-status element—an essential element of a § 922(g)(1) offense—the second superseding indictment was "fatally flawed as it fails to charge an offense." JA1385. Mr. Slocum also argued that his convictions under § 922(g)(1) were invalid because he had a Second Amendment right to possess a gun.[2] JA1356–1357. He further argued that he was actually innocent of these convictions because the government never recovered any guns and thus failed to present any guns to the grand jury or the trial jury. JA1350, JA1356–1357.

The Magistrate Judge issued a Second PF&R to address Mr. Slocum's *Rehaif* claims and other supplemental motions. JA1485–1513. In recommending denial of the *Rehaif* claims, the Magistrate Judge reasoned that any error in the indictment or at trial was harmless and not prejudicial because the government would have had little difficulty proving Mr. Slocum knew his status. JA1506. The record, the Magistrate

---

[2] Mr. Slocum raised this Second Amendment claim before the Supreme Court's decision in *Rehaif* was issued. On April 23, 2018, he filed a renewed motion for a judgment of acquittal on his § 922(g)(1) convictions. Dkt. 180; Fed. R. Crim. P. 29. Citing the Supreme Court's decision in *Class v. United States*, 138 S. Ct. 798 (2018), Mr. Slocum argued that his gun charges were invalid because § 922(g)(1) violated his Second Amendment rights. Dkt. 180 at 5.

Judge explained, showed that he spent "over 12 years in prison on four felony charges." JA1506. The Magistrate Judge also recommended denying Mr. Slocum's Second Amendment claim because this Court had previously foreclosed Second Amendment challenges to § 922(g)(1). JA 1507 (citing *United States v. Moore*, 666 F.3d 313, 316 (4th Cir. 2012)).

Mr. Slocum filed timely objections to the Second PF&R, and specifically objected to the recommendations on the *Rehaif* and Second Amendment claims. JA1514–1537.

### C. The District Court's Decision

The district court issued a Memorandum Opinion and Order on August 20, 2021, adopting the Magistrate Judge's First PF&R in full, JA1538–1574, including its conclusion that Mr. Slocum's counsel was not deficient for failing to raise a double jeopardy challenge, JA1544. The district court agreed that the conspiracies charged in Counts 1 and 2 were distinct because they involved two different controlled substances and because of the alleged conspiracies' "extensive operations and network." JA1544–1545.

The district court reviewed Mr. Slocum's *Rehaif* arguments *de novo*. JA1555. It concluded that Mr. Slocum procedurally defaulted his *Rehaif*

claim and could not show either cause and prejudice or actual innocence to excuse his default because the evidence in the record "overwhelmingly indicate[d] that [Mr. Slocum] knew of his felon status" at the time he possessed the guns. JA1568–1569. Finally, the district court agreed with the Magistrate Judge that Mr. Slocum's Second Amendment challenge was "without merit." JA1571 n.11. The district court entered a Judgment Order dismissing Mr. Slocum's § 2255 motion and denying a COA on all issues. JA1575–1576.

Mr. Slocum filed a notice of appeal and an informal brief requesting a COA on all of the issues raised in his § 2255 motion. CA4 Dkt. 7. His brief included specific requests for a COA on his claim that his counsel was ineffective for failing to challenge the second superseding indictment as multiplicitous on Counts 1 and 2 and on his *Rehaif* claim. *Id.*

This Court entered an order granting a COA on the issue of "whether trial counsel was ineffective in failing to challenge Count 2 of the second superseding indictment as multiplicitous, in contravention of the Double Jeopardy Clause" and appointed the undersigned as counsel for Mr. Slocum. CA4 Dkts. 12, 13. The Court denied a COA as to all other issues. CA4 Dkt. 13. Mr. Slocum requests that this Court expand

the COA to address claims challenging his two § 922(g)(1) convictions (Counts 3 and 4) under *Rehaif* and the Second Amendment.

## SUMMARY OF THE ARGUMENT

Mr. Slocum's counsel was ineffective for failing to object to Counts 1 and 2 of the second superseding indictment as multiplicitous. The Double Jeopardy Clause bars the government from charging a single conspiracy with multiple criminal objects as two or more violations of the same conspiracy statute. The government did exactly that. By charging a single alleged agreement to distribute heroin and oxycodone as two separate drug conspiracies, both in violation of 21 U.S.C. § 846, the government subjected Mr. Slocum to multiple punishments for a single crime. For that reason, this Court should reverse the district court's denial of Mr. Slocum's § 2255 motion and remand for further proceedings.

To determine whether two or more conspiracy charges are multiplicitous in violation of the Double Jeopardy Clause, this Court applies the totality-of-the-circumstances test it adopted in *MacDougall v. United States*, 790 F.2d 1135, 1144 (4th Cir. 1986). The totality of the evidence presented in this case shows a single conspiracy. As the district court found, the conspiracies alleged in Counts 1 and 2 took place at the same time and in the same location, involved the same alleged co-conspirators, were the same in nature and scope, and violated the same

conspiracy statute. That the government alleged a different drug in each count—heroin in Count 1 and oxycodone in Count 2—does not mean there were two conspiracies: the evidence presented at trial showed that both drugs were part of a single, connected conspiracy. Indeed, the evidence showed that the same individuals, who knew each other and their role within the larger conspiracy, would sell both drugs using identical methods. Even the government characterized both conspiracies at trial as "a big drug conspiracy." JA875. Because there was a strong claim under existing case law that Counts 1 and 2 in the second superseding indictment were multiplicitous, counsel's failure to raise such a claim constituted deficient performance under *Strickland*.

Counsel's error also prejudiced Mr. Slocum because he received multiple punishments for a single crime. Although the government's evidence established only one conspiracy, Mr. Slocum had to pay a $100 special assessment for each conviction, faced collateral consequences associated with the additional conviction, and received a potentially larger fine. Mr. Slocum also faced prejudice at trial because the government's inclusion of the second drug conspiracy charge overstated the extent of his criminal activity, making him appear more culpable to

the jury. Each of these consequences individually and collectively establish *Strickland* prejudice.

This Court should also grant an expansion of the COA to review whether Mr. Slocum's § 922(g)(1) charges (Counts 3 and 4) in the second superseding indictment should be reversed because they violated *Rehaif*, 139 S. Ct. 2191, and his Second Amendment rights. The government violated *Rehaif* when it failed to assert in the second superseding indictment that Mr. Slocum knew he had a prior felony conviction at the time he allegedly possessed the firearms. Although Mr. Slocum did not raise this claim at trial or on direct appeal, he had cause not to raise it. Prior to *Rehaif*, courts of appeals had uniformly rejected such a claim. And the government's failure to include the knowledge-of-status element in the indictment prejudiced Mr. Slocum because the indictment excluded a core element of the alleged crime and thus failed to state an offense. The government's error deprived Mr. Slocum of an opportunity to prepare a defense to that element. Because Mr. Slocum can demonstrate a *Rehaif* violation and cause and prejudice to surmount procedural default, his convictions on Counts 3 and 4 should be overturned.

Finally, Mr. Slocum argues that his § 922(g)(1) convictions (Counts 3 and 4) violate his Second Amendment rights because they are not in line with the nation's historical tradition of firearm regulation.

**ARGUMENT**

## I. DEFENSE COUNSEL WAS INEFFECTIVE UNDER *STRICKLAND* IN FAILING TO RAISE A MERITORIOUS DOUBLE JEOPARDY CLAIM.

The government violated the Double Jeopardy Clause when it charged Mr. Slocum with two separate conspiracies to sell heroin and oxycodone, both under § 846, when the evidence showed only one conspiracy existed. *See Braverman v. United States*, 317 U.S. 49, 52-53 (1942) (holding that an agreement to commit several crimes is but one conspiracy). Mr. Slocum's counsel performed deficiently by failing to challenge the two conspiracy offenses alleged in Counts 1 (heroin) and 2 (oxycodone) of the second superseding indictment or the convictions on both counts. *See Strickland*, 466 U.S. at 687. And this deficient performance prejudiced Mr. Slocum because, but for his counsel's failure to raise the double jeopardy claim, he would have received a lesser sentence. *See id.* at 694. This Court reviews a district court's legal conclusions in denying a § 2255 motion *de novo*. *United States v. Carthorne*, 878 F.3d 458, 464 (4th Cir. 2017).

### A. Counsel's Failure to Raise a *Braverman* Claim Constitutes Deficient Performance.

The Double Jeopardy Clause prohibits the government from initiating two or more successive prosecutions for the "same offense," and

19

from charging the "same offense" in more than one count in an indictment (known as multiplicity). *See* U.S. Const. amend. V; *see also Gamble v. United States*, 139 S. Ct. 1960, 1965 (2019) (explaining that the Double Jeopardy Clause "protects individuals from being twice put in jeopardy for the same *offence*") (internal quotation marks and citations omitted); *United States v. Colton*, 231 F.3d 890, 908 (4th Cir. 2000) ("[M]ultiplicity involves 'charging a single offense in more than one count in an indictment.'") (citations omitted).

The Clause also bars the government from charging multiple violations of the same conspiracy statute where only a single agreement exists. *See Braverman*, 317 U.S. at 52–53 (overturning multiplicitous conspiracy convictions); *United States v. MacDougall*, 790 F.2d 1135, 1144 (4th Cir. 1986) (applying *Braverman* to successive prosecution cases). That is true "[w]hether the object of a single agreement is to commit one or many crimes." *Braverman*, 317 U.S. at 53. In *Braverman*, the Court explained that "the precise nature and extent of the conspiracy must be determined by reference to the agreement which embraces and defines [the conspiracy's] objects." *Id.* In short, a single conspiracy exists

where there is "one overall agreement." *United States v. Leavis*, 853 F.2d 215, 218 (4th Cir. 1988) (citation omitted).

This Court has repeatedly applied the core holding of *Braverman*. *See MacDougall*, 709 F.2d at 1144; *United States v. Ragins*, 840 F.2d 1184, 1190 (4th Cir. 1988). *Braverman*, however, did not explain how courts should determine whether one overall agreement or multiple agreements exist. This Court, along with the majority of other circuits, has adopted a totality-of-the-circumstances test to assess whether a single conspiracy—i.e., a single agreement—exists for double jeopardy purposes.[3] *MacDougall*, 709 F.2d at 1144; *see also United States v.*

---

[3] The government argued that the "same-evidence" test established in *Blockburger v. United States*, which asks whether each statutory provision charged "requires proof of a fact [or element] which the other does not," should apply. 284 U.S. 299, 304 (1932); JA1236. In *MacDougall*, however, this Court held that *Blockburger* was "of limited value in deciding double jeopardy claims" involving conspiracy prosecutions and agreed with the "many courts" that have found that a "totality of the circumstances test is the correct approach." *MacDougall*, 760 F.2d at 1144. Additionally, the *Blockburger* test is designed to analyze whether "two distinct statutory provisions" are the same offense for double jeopardy purposes, 284 U.S. at 304, but it does not apply to double jeopardy challenges involving multiple violations of the *same* statute. *United States v. Stewart*, 256 F.3d 231, 247 n.10 (4th Cir. 2001) (explaining that the "'same evidence' test, developed in *Blockburger* . . . applies only when the government charges distinct offenses arising under 'separate statutes'") (internal citations omitted); *see also United States v. Cooper*, 886 F.3d 146, 153 (D.C. Cir. 2018).

*Cooper*, 886 F.3d 146 (D.C. Cir. 2018) (collecting cases). This test also applies in the multiplicitous indictment context. *See, e.g.*, *United States v. Powell*, 894 F.2d 895, 898–99 (7th Cir. 1990) (applying the totality-of-the-circumstances test in the multiplicitous indictment context).

Here, despite the lack of any evidence of two distinct agreements, the government charged Mr. Slocum with two violations of the same conspiracy statute, 21 U.S.C. § 846—one for distributing heroin and one for distributing oxycodone. But both the indictment and the evidence introduced at trial show only one agreement covering both drugs. As a result, under *Braverman* and this Court's case law, the second superseding indictment was multiplicitous in violation of the Double Jeopardy Clause. Therefore, Mr. Slocum's counsel was deficient for failing to challenge it.

### 1. Mr. Slocum's Indictment was Multiplicitous and Violated the Double Jeopardy Clause.

The government improperly charged Mr. Slocum with two conspiracies when it offered evidence of only one agreement. In applying the totality-of-the-circumstances test to determine if one conspiracy exists, this Court engages in a "full study of the indictment[] and evidence" and considers five factors: (1) the time periods in which the

alleged conspiracies occurred; (2) the places where the conspiracies are alleged to have occurred; (3) the co-conspirators; (4) "the overt acts or . . . other descriptions of the offenses charged which indicate the nature and scope of the activities" being prosecuted; (5) the substantive statutes that have been violated. *MacDougall*, 790 F.2d at 1144.

This is an open and shut case: All five factors show that a single alleged conspiracy existed. The Magistrate Judge found, in a PF&R that the district court adopted, that "[the conspiracies] contain[ed] the same language as to location, dates, and potential co-conspirators, and differ[ed] only as to the controlled substances that are the object of the conspiracy." JA1276; JA1572. Even the government explicitly characterized the drug operation as a *single* overarching conspiracy at trial. JA843 ("Let's talk about *that* drug conspiracy.") (emphasis added); JA875 ("Ladies and gentlemen, in the end, this is just *a big drug conspiracy*") (emphasis added).

A review of both the indictment and evidence presented at trial confirms a single conspiracy. The two counts allege that the conspiracies occurred during identical *time periods* ("From before May 2012 through October 2013"); in identical *locations* ("[A]t or near Charleston, Kanawha

County, West Virginia, and within the Southern District of West Virginia and elsewhere"); and violated the same *statutory provisions* ("[C]onspired to commit offenses in violation of Title 21, United States Code, Section 841(a)(1) . . . [i]n violation of Title 21, United States Code, Section 846."). JA31–32. "Thus, the substantive offense, time span, and geographic area factors weigh heavily in favor of double jeopardy violation." *United States v. Jones*, 858 F.3d 221, 227 (4th Cir. 2017).

The two counts also involved the same co-conspirators. As the government asserted in its opening statement, many of those involved in the alleged conspiracies took part in the sale of both heroin and oxycodone. JA54–55 (explaining that numerous co-conspirators "got [their] start selling heroin and [oxycodone] pills"). The government's witnesses provided evidence to support that theory, testifying that they distributed both heroin and oxycodone, often as a way to support their own addiction. *See*, *e.g.*, JA379–380, JA386–388, JA628–632. As the government reiterated in its closing argument, "[e]ssentially, every one of the witnesses in this case . . . testified that they at one time or another purchased heroin and/or [oxycodone] pills directly from the defendant." JA843.

The evidence of overt acts offered at trial related to only one conspiracy because the nature and scope of the two alleged conspiracies were largely identical, with each following the same exact pattern:  the witnesses claimed Mr. Slocum would import heroin and oxycodone from Detroit and provide sellers with a supply of both drugs, and they would either use the drugs or "go sell it" in the Charleston region and "bring back cash."  JA410; *see also* JA54–55, JA377–381, JA417–427.  The government emphasized in its closing argument that the evidence showed there was "a very clear method" at play— "a modus operandi, M-O" which was "exactly the same all the way through" both conspiracies.  *See* JA843.

Despite agreeing that there was "substantial overlap" between the two alleged conspiracies, the district court erroneously concluded that there was no double jeopardy violation.  JA1276, JA1280–1282.[4]  First, it accepted the government's argument that there were two separate conspiracies because different controlled substances were alleged in each count.  JA1276.  But that argument runs headlong into *Braverman.*

---

[4] The district court adopted the Magistrate Judge's reasoning and conclusions in the First PF&R in full.  JA1572.

Under *Braverman*, a single agreement to sell heroin and oxycodone cannot "be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one." 317 U.S. at 53. "A single agreement to commit several crimes constitutes one conspiracy." *United States v. Broce*, 488 U.S. 563, 570–71 (1989); *see also United States v. Young*, 989 F.3d 253, 263 (4th Cir. 2021) ("A single conspiracy exists where there is one overall agreement . . . even when that agreement . . . has multiple objects.") (internal quotation marks and citations omitted).

Numerous courts have held that a single agreement to distribute multiple controlled substances constitutes a single conspiracy offense for double jeopardy purposes. *See, e.g., Powell*, 894 F.2d at 899 ("[T]he facts of this case show a single conspiracy involving both cocaine and methamphetamine, and the indictment was multiplicitous."); *United States v. Gomez-Pabon*, 911 F.2d 847, 861 (1st Cir. 1990) ("Although the drug involved in Count Two was marijuana and that in Count Three cocaine, we do not think this distinction establishes two separate conspiracies."); *see also Maxwell v. United States*, 617 Fed. App'x. 470, 473 (6th Cir. 2015) (noting the government's concession that Maxwell's

two § 846 convictions were multiplicitous because they "only differ[ed] with respect to the drug involved in the conspiracy").

Moreover, courts, including this one, "have uniformly upheld multiple-object conspiracies" in variance cases. *See United States v. Bolden*, 325 F.3d 471, 492 (4th Cir. 2003).[5] For example, in *United States v. Cannady*, this Court held that the government had properly charged a defendant with one conspiracy that involved the distribution of cocaine *and* heroin. 924 F.3d 94, 97, 100 (4th Cir. 2019) (finding that "the evidence presented at trial comports with the single conspiracy alleged in the indictment."); *see also United States v. Urbanik*, 801 F.2d 692, 696 (4th Cir. 1986) (holding that the jury properly found a single conspiracy to distribute cocaine and marijuana). The existence of more than one type of controlled substance does not defeat Mr. Slocum's double jeopardy claim.

---

[5] *See, e.g.*, *Bobb v. United States*, 471 F.3d 491, 494–95 (3d Cir. 2006) (concluding that the government had properly charged the defendant with one conspiracy under § 846, even though it involved the distribution of crack cocaine, cocaine, heroin, and ecstasy); *United States v. Dale*, 178 F.3d 429, 431 (6th Cir. 1999) (finding that "[a] single conspiracy may have as its objective the distribution of two different drugs without rendering it duplicitous").

Next, the district court concluded that there was one agreement to distribute heroin and one agreement to distribute oxycodone because two individuals who allegedly worked for Mr. Slocum traveled to a town in West Virginia a few hours from Charleston to sell only oxycodone. JA1280–1281. This argument is factually and legally erroneous. To start, evidence suggests that these individuals sold *both* heroin and oxycodone on this trip. JA387. But even assuming the trip was taken to sell oxycodone alone, it still does not mean that there were two conspiracies because the government cannot "select[] a single overt act from [a] series and prosecute it as a separate conspiracy." *United States v. Jarvis,* 7 F.3d 404, 412 (4th Cir. 1993); *see also United States v. Grassi*, 616 F.2d 1295, 1303 (5th Cir.1980) ("Seemingly independent transactions may be revealed as parts of a single conspiracy by their place in a pattern of regularized activity involving a significant continuity of membership.").

Finally, the district court concluded that there was more than one conspiracy because the alleged drug scheme was a hub-and-spoke operation without a connecting wheel. JA1281–1282 (citing *Kotteakos v. United States*, 328 U.S. 750, 768–69 (1946)). A hub-and-spoke scheme,

like the one in *Kotteakos*, is one where "various defendants enter into separate agreements with a common defendant" but "have no connection with one another." *Dickson v. Microsoft Corp.*, 309 F.3d 193, 203 (4th Cir. 2002). Each separate agreement is its own conspiracy. *Id.* Though the government never once asserted a *Kotteakos* theory at trial, the district court concluded there was enough evidence to show multiple conspiracies because Mr. Slocum was the only "common link tying" many of the co-conspirators together, and the individuals involved in selling both drugs did not act "as part of an interdependent team." JA1281.

The evidence undermines the district court's post hoc theory of the case. The government only charged two conspiracies, not multiple individual conspiracies between Mr. Slocum and each alleged co-conspirator. In any event, this was not a hub-and-spoke conspiracy because the alleged co-conspirators were well acquainted, working in tandem to further one alleged conspiracy. Far from the siloed operations in a hub-and-spoke scheme, all of the government's witnesses testified that they knew and worked with other members of the alleged drug operation. *See, e.g.*, JA378–381, JA384, JA513. The alleged co-conspirators lived together, sold both drugs together, and even identified

each other by photograph at trial. JA378–381, JA384, JA513. Unlike the defendants in *Kotteakos*, who had nothing to do with each other, 328 U.S. at 758, the alleged co-conspirators in this case often "associated directly with one another." *See Cannady*, 924 F.3d at 101 n.2.

The evidence presented at trial also established that the co-conspirators involved in this case "knew they were part of a broad distribution scheme." *Id.*; *United States v. Banks*, 10 F.3d 1044, 1054 (4th Cir. 1993) (explaining that in drug conspiracy cases a single conspiracy exists when the participants know "that the illegal efforts of others were required to make their own dealings possible") (alterations adopted). The individuals involved in this alleged operation, unlike the defendants in *Kotteakos*, all "knew of and joined in the overriding scheme." *Blumenthal v. United States*, 332 U.S. 539, 559 (1947).

In sum, given the substantial overlap in timing, location, participants, and scope between the two conspiracies alleged in the indictment, the government offered proof of only one, cohesive conspiracy. For that reason, this Court should find that Mr. Slocum's indictment was multiplicitous and violated the Double Jeopardy Clause.

### 2. Mr. Slocum's Counsel Performed Deficiently in Failing to Raise the Double Jeopardy Claim at Trial.

Existing case law "strongly suggest[ed]" Mr. Slocum's double jeopardy challenge was meritorious, rendering counsel's performance deficient under *Strickland*. *United States v. Carthorne*, 878 F.3d 458, 466 (4th Cir. 2017). At the time of trial, the *Braverman* and *MacDougall* line of cases made clear that Mr. Slocum had a meritorious argument that his indictment was multiplicitous. Each prong of the totality-of-the-circumstances test weighs heavily in Mr. Slocum's favor, so the double jeopardy claim, if raised, was likely to succeed. *See Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998) ("[F]ailure to raise a well-established, straightforward, and obvious double jeopardy claim constitutes ineffective performance.").

Moreover, the relevant case law at the time of trial established that a single conspiracy can involve multiple drugs. *Carthorne*, 878 F.3d at 466 (holding that counsel is required to raise a legal challenge "when there is relevant authority strongly suggesting" such a challenge is warranted). *Braverman* held that the government could not split a single agreement to commit several crimes into multiple conspiracy counts in the same indictment. 317 U.S. at 53–54. This Court had also upheld

"multiple-object conspiracies" in variance cases before Mr. Slocum's trial. *See Bolden*, 325 F.3d at 492 ("Courts have uniformly upheld multiple-object conspiracies"); *see also Urbanik*, 801 F.2d at 696 (finding that one conspiracy existed even though it involved cocaine and marijuana). And at the time of Mr. Slocum's trial, many other circuits had concluded in multiplicity cases that a single agreement to distribute multiple controlled substances constitutes a single conspiracy offense for double jeopardy purposes. *See, e.g., Powell*, 894 F.2d at 898–99; *Gomez-Pabon*, 911 F.2d at 861.

Despite the abundance of precedent supporting Mr. Slocum's claim, the district court concluded that his counsel was not deficient because this Court, in an unpublished and non-precedential opinion, concluded that multiple drug conspiracy convictions do not violate the Double Jeopardy Clause when they involve separate controlled substances. JA1276–1277 (citing *United States v. Ivey*, 722 Fed. Appx. 336 (4th Cir. 2018)). But *Ivey*, which was decided *after* Mr. Slocum's trial and direct appeal ended, is irrelevant because "[c]laims of ineffective assistance are evaluated in light of the available authority at the time of counsel's allegedly deficient performance." *Carthorne*, 878 F.3d at 466. Even had

*Ivey* been decided at the time of Mr. Slocum's trial, nothing in it suggests that counsel should not have made an argument based on *Braverman* and *MacDougall* because *Ivey* was not precedential, and it did not address either of those decisions. And *Ivey* was decided based only on *Anders* briefing,[6] so the decision is entitled to even less weight than usual because it resolved the issue without full briefing on the *Braverman* issue. *Ivey*, 722 Fed. Appx. at 336.

Under the governing case law, Mr. Slocum's indictment and conviction on Counts 1 and 2 violated the Double Jeopardy Clause. Counsel's failure to raise such a meritorious claim constitutes deficient performance.

### B. Counsel's Failure to Object to the Multiplicitous Counts in the Indictment Prejudiced Mr. Slocum.

Because Mr. Slocum received multiple punishments for Counts 1 and 2 of the second superseding indictment, counsel's failure to object to the multiplicitous counts prejudiced him. It subjected him to an additional special assessment, the collateral consequences associated with an additional charge and conviction, and a potentially larger fine.

_____

[6] *See Anders v. California*, 386 U.S. 738, 744 (1967).

This result, which would not have occurred but for counsel's deficient performance, supports a finding of prejudice. *Strickland*, 466 U.S. at 694 (holding that prejudice exists if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

Had his counsel properly objected to Counts 1 and 2 as multiplicitous, Mr. Slocum would not have had to pay an additional special assessment. In *Rutledge v. United States*, the Supreme Court held that even on counts with concurrent life sentences, a $50 special assessment amounted to cumulative punishment in violation of the Double Jeopardy Clause. 517 U.S. 292, 301–03 (1996). Extending *Rutledge* to ineffective assistance of counsel claims, this Court held an additional $100 special assessment constitutes additional punishment sufficient to establish *Strickland* prejudice, even where the defendant's imprisonment term remains the same. *See United States v. Sellers*, 657 Fed. Appx. 145, 148 (4th Cir. 2016) (finding prejudice from the multiplicitous conviction, even where a term of life imprisonment applied to another count, because "[t]he imposition of a special assessment is

itself punishment"). Two punishments where only one is permitted constitutes prejudice. *Id.*

Other courts have similarly extended *Rutledge* to § 2255 motions alleging ineffective assistance of counsel for failure to challenge multiplicitous convictions. *See, e.g.*, *United States v. Jones*, 403 F.3d 604, 607 (8th Cir. 2005) ("Although it is true that the additional conviction that Mr. Jones received as a result of his lawyer's performance did not increase the length of his sentence . . . the $100 statutory special assessment that Mr. Jones received for his second conviction . . . constitutes actual prejudice."). Mr. Slocum was similarly prejudiced here. He received a $100 special assessment for each count and a $5,000 fine for all five counts. Had his counsel properly challenged the multiplicitous count, Mr. Slocum would not have had to pay the additional special assessment and likely would have received a reduced fine.

On top of the additional special assessment, the significant collateral consequences attached to Mr. Slocum's additional conviction were prejudicial. *See Ball v. United States*, 470 U.S. 856 (1985). In *Ball*, the Supreme Court recognized the "adverse collateral consequences"

beyond an incarceration sentence that stem from an additional conviction and declared that such consequences "may not be ignored." *Id.* For example, a second conviction "may be used to impeach the defendant's credibility in later proceedings" and comes with additional societal stigma. *Id.* Due to these collateral consequences, trial counsel's failure to object to the multiplicitous counts in the indictment prejudiced Mr. Slocum. *See Jackson*, 162 F.3d at 86 (emphasizing that even if the potential collateral consequences may seem limited, they are enough to satisfy the *Strickland* prejudice standard).

In addition, Mr. Slocum also suffered prejudice at trial. The government's inclusion of the multiplicitous charges "create[d] an exaggerated impression of [Mr. Slocum's] criminal activity" for the jury. *United States v. Polizzi*, 257 F.R.D. 33, 36 (E.D.N.Y. 2009); *see also United States v. Langford*, 946 F.2d 798, 802 (11th Cir. 1991); *United States v. Ketchum*, 320 F.2d 3, 8 (2d Cir. 1963). This "exaggerated impression" of Mr. Slocum's criminality increased the risk "that the jury [was] diverted from careful analysis of the conduct at issue, and . . . assume[d]" Mr. Slocum's guilt. *United States v. Johnson*, 130 F.3d 1420, 1426 (10th Cir. 1997) (internal quotation marks and citations omitted).

The multiplicitous drug conspiracy counts inappropriately enhanced the jury's perception of him as guilty, thus prejudicing the outcome of Mr. Slocum's case. The prejudice was particularly potent because the evidence on Mr. Slocum's other charges was weak. Mr. Slocum was convicted of two counts of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1), but as the government admitted at trial, the alleged firearms were never recovered or put into evidence. JA855 (admitting that "we don't have the guns. You [the jury] don't have those in evidence."). The multiple conspiracy counts overstated Mr. Slocum's criminal activity and may have swayed the jury to convict him on the gun charges, even though the government failed to produce the guns in question.

Because of the prejudice resulting from his counsel's deficient performance, this Court should vacate Mr. Slocum's convictions and remand the case for a new trial.

## II. MR. SLOCUM'S § 922(G)(1) CONVICTIONS SHOULD BE VACATED BECAUSE THE INDICTMENT FAILED TO ALLEGE ALL ELEMENTS NECESSARY TO CHARGE AN OFFENSE AND BECAUSE § 922(G)(1) VIOLATES HIS SECOND AMENDMENT RIGHTS.

Mr. Slocum challenges his § 922(g)(1) convictions on two distinct grounds and asks the Court to expand the COA and review these issues

on the merits. First, his convictions fail to comply with the Supreme Court's decision in *Rehaif v. United States*, which requires indictments for § 922(g)(1) convictions to include a knowledge-of-status element as the statute requires. 139 S. Ct. 2191, 2194 (2019). Counts 3 and 4 of Mr. Slocum's second superseding indictment did not include this element. Second, these convictions violate Mr. Slocum's Second Amendment right to bear arms. On each of these grounds, Mr. Slocum seeks to have his § 922(g)(1) convictions vacated and the case remanded for a new trial.

## A. Mr. Slocum's Indictment Failed to Allege Knowledge of Status and Therefore Failed to Charge an Offense under *Rehaif*.

Mr. Slocum was indicted on two counts of possessing a firearm as a person with a felony conviction in violation of § 922(g)(1). *See* JA33–34. In *Rehaif*, the Supreme Court held that to convict a defendant under § 922(g), "the Government . . . must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." 139 S. Ct. at 2194. But here the government failed to allege in the second superseding indictment, or present evidence to the grand jury establishing, that Mr. Slocum knew that he had a felony

conviction when he allegedly possessed the firearms. This omission violates the requirements of *Rehaif*.[7]

Although Mr. Slocum did not raise a *Rehaif* claim at trial or on direct appeal, any procedural default is excused because he can demonstrate both cause and prejudice. *Bousley v. United States*, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate . . . 'cause' and actual 'prejudice[.]'") (internal citation omitted).

Because a challenge to the lack of a knowledge-of-status element in Mr. Slocum's indictment cut against a "near-unanimous body of lower court authority," he had cause not to raise the argument before the *Rehaif* decision. *See Reed v. Ross*, 468 U.S. 1, 15 (1984) (internal citation omitted). The government charged Mr. Slocum years before the Supreme

---

[7] The government conceded that the *Rehaif* standard is retroactive. *See* JA1361–1362 ("In this case, defendant's *Rehaif* claim falls within 28 U.S.C. § 2255(f)(3) because the Supreme Court narrow[ed] the class of persons that the law punishes and thus is retroactive in defendant's case. Consequently, the claim is timely as an exception to the one-year statute of limitations.") (internal quotation marks and citations omitted); *see also Seabrooks v. United States*, 32 F.4th 1375, 1383 (11th Cir. 2022) (finding that "*Rehaif* announced a new rule of substantive law that applies retroactively").

Court's holding in *Rehaif*. At that time, every court of appeals to have considered this question—including this Court—failed to recognize the knowledge-of-status element within § 922(g) and § 924(a)(2). *See Rehaif*, 139 S. Ct. at 2201 (Alito, J., dissenting) (emphasizing that the *Rehaif* opinion overturns "long-established" interpretations of § 922(g) "adopted by every single Court of Appeals to address the question"); *see also United States v. Langley*, 62 F.3d 602, 605–06, 608 (4th Cir. 1995), *abrogated by Rehaif*, 139 S. Ct. 2191.

While futility may not be established "simply" because "a claim was unacceptable to [a] particular court at [a] particular time," *Bousley*, 523 U.S. at 623 (internal quotation marks and citation omitted), "futility can constitute cause if it means that a claim has been unacceptable to a near-unanimous body of lower courts for a sustained period." *See United States v. Werle*, 35 F.4th 1195, 1201 (9th Cir. 2022) (finding that a *Rehaif* claim would have been futile). Mr. Slocum's claim was not acceptable to *any* court of appeals. That is not to say that such arguments had not been raised before the Court's *Rehaif* decision. *See, e.g.*, *United States v. Games-Perez*, 667 F.3d 1136, 1142–46 (10th Cir. 2012) (Gorsuch, J., concurring in judgment) (arguing that § 922(g) should be interpreted to

include a knowledge-of-status requirement).  Rather, such an argument would have been futile before *Rehaif* because it had been "uniformly rejected by *every* circuit to consider it for a sustained period of time[.]" *United States v. Pollard*, 20 F.4th 1252, 1262 (9th Cir. 2021) (Forrest, J., concurring)*; see also United States v. Lockhart*, 947 F.3d 187, 196 (4th Cir. 2020) (en banc) (acknowledging that no one knew what the elements of a § 922(g) charge were before *Rehaif* because there was a "wholesale misunderstanding of the law").  Indeed, even then-Judge Gorsuch's view was rejected by the en banc Tenth Circuit, and the Supreme Court denied defendant's petition for certiorari.  *United States v. Games-Perez*, 695 F.3d 1104, 1105 (10th Cir. 2012) (denying rehearing en banc); *Games-Perez v. United States*, 571 U.S. 830 (2013).  Against this backdrop, no reasonable attorney could have been expected to raise a knowledge-of-status challenge prior to *Rehaif*.

Mr. Slocum was also prejudiced by the government's failure to allege the knowledge-of-status element in the indictment.  "An indictment must contain the elements of the offense charged, fairly inform a defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense."

*United States v. Daniels*, 973 F.2d 272, 274 (4th Cir. 1992). A charge in an indictment that does not include "every essential element of the offense" is invalid. *See United States v. Kingrea*, 573 F.3d 186, 191 (4th Cir. 2009) (internal citations omitted); *see also In re Winship*, 397 U.S. 358, 364 (1970) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.").

Here, there is no dispute that Mr. Slocum's indictment did not include an essential element—the knowledge-of-status element. And evidence on the knowledge-of-status element was never presented to the grand jury. As a result, his indictment was "fatally defective" because it failed to charge a federal offense, and upholding his conviction violates due process. *See Daniels*, 973 F.2d at 275; *see also Dunn v. United States*, 442 U.S. 100, 106 (1979) ("To uphold a conviction on a charge that was neither alleged in an indictment nor presented to a jury at trial offends the most basic notions of due process."). Mr. Slocum cannot be convicted of a crime he was not properly charged with, and permitting the charge and associated guilty verdict to stand constitutes a fundamental miscarriage of justice.

This prejudice was compounded when the government presented both § 922(g)(1) counts to the jury. The inclusion of these two additional, untested charges—raising the number of charges from three to five—in the indictment prejudiced the jury against Mr. Slocum by overstating the extent of his alleged criminal activity. *See United States v. Carter,* 576 F.2d 1061, 1064 (3d Cir.1978) (explaining that the inclusion of additional charges "may prejudice the jury against the defendant by creating the impression of more criminal activity on his part than in fact may have been present."); *Polizzi*, 257 F.R.D. at 38 ("[I]t is not unlikely that a lay juror would be prepared to find a defendant guilty more readily if he were tried for [many rather than a few] crimes."). The presentation of defective gun charges to the jury, especially given that no guns were entered into evidence, was particularly prejudicial because it created the impression that Mr. Slocum was violent or dangerous. This prejudice was further heightened by the improper inclusion of the multiplicitous drug conspiracy charges. The possibility that these improper charges tainted Mr. Slocum's jury verdict, as to both these counts and his case more broadly, is enough to establish prejudice.

The district court concluded that Mr. Slocum was not prejudiced because the evidence showed that he was aware of his status at the time he allegedly possessed the gun. In reaching this conclusion, the district court relied on the Supreme Court's plain error analysis in *Greer v. United States*, 141 S. Ct. 2090, 2096 (2021). JA1564–1568. In *Greer*, the Court held that petitioners can prove that "*Rehaif* errors . . . affected their substantial rights" under the plain error analysis if they can show that they would have been able to present evidence at trial to refute knowledge-of-status had they been made aware of that element. *Greer*, 141 S. Ct. at 2097–98.

The district court's reliance on *Greer* is misplaced for two reasons. First, appellate courts cannot "guess as to what was in the minds of the grand jury at the time they returned the indictment." *Russell v. United States*, 369 U.S. 749, 770 (1962). Otherwise, courts could convict defendants "on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him." *Id.*

Second, it is impossible to know if the government could have proved that Mr. Slocum had knowledge-of-status or if Mr. Slocum could have rebutted that assertion because the government never alleged that

element. While the *Greer* Court noted that individuals with felony convictions generally know their status, Justice Sotomayor cautioned that "[t]oday's decision . . . should not be read to create a legal presumption that every individual convicted of a felony understands he is a felon. The Government must prove the knowledge-of-status element beyond a reasonable doubt, just like any other element." 141 S. Ct. at 2103 (Sotomayor, J., concurring in part, dissenting in part). Similarly, the majority opinion recognized that there may be circumstances where a defendant does not know he or she is a person convicted with a felony. *Id.* at 2097. Since *Greer*, this Court has found that such circumstances do exist. *See, e.g.*, *United States v. Barronette*, 46 F.4th 177, 199 (4th Cir. 2022) (reversing a § 922(g)(1) conviction because defendant could have presented evidence at trial supporting a finding that he did not have knowledge of his status as a felon when carrying a weapon).

Mr. Slocum was prejudiced because the government failed to prove, beyond a reasonable doubt, that he had knowledge-of-status, and because he was deprived of an opportunity to prove he was one of those defendants that did not know his status. Had the indictment included the knowledge-of-status element, Mr. Slocum would have been put on

notice that the government had to prove knowledge-of-status and he could have prepared a defense or presented evidence that he did not know his status. *See Kingrea*, 573 F.3d at 191 (explaining that an indictment must "fairly inform a defendant of the charge") (internal citations omitted). But the knowledge-of-status element was not included. As a result, Mr. Slocum's trial was tainted by his inability to defend against elements of a crime neither he nor the government knew they needed to prove.

Because Mr. Slocum can demonstrate cause and prejudice, his convictions on Counts 3 and 4 should be overturned under *Rehaif*.

## B. Mr. Slocum's Convictions under § 922(g)(1) Violate His Second Amendment Rights.

Section 922(g)(1), facially and as applied to Mr. Slocum, violates the Second Amendment because it is inconsistent "with this Nation's historical tradition of firearm regulation." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2126 (2022); *see also* U.S. Const. amend. II. For example, the historical evidence shows "[f]ounding-era legislatures did not strip felons of the right to bear arms simply because of their status as felons." *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir.

2019) (Barrett, J., dissenting).[8]   Because of the Second Amendment violation, Mr. Slocum asserts that he is actually innocent of Counts 3 and 4 and his convictions should be vacated.

Counsel recognizes that this Court has held that § 922(g)(1) does not violate the Second Amendment and is a "constitutionally valid statute." *United States v. Moore*, 666 F.3d 313, 317 (4th Cir. 2012).  But Mr. Slocum asks this Court to reconsider its precedent under the historical analysis required by the Supreme Court's recent decision in *Bruen*.

## CONCLUSION

For the foregoing reasons, this Court should reverse the judgment of the district court and remand with instructions to order a new trial.

---

[8] The majority opinion's analysis in *Kanter* was abrogated by *Bruen*, 142 S. Ct. 2111.

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Slocum respectfully requests oral argument pursuant to Fed. R. App. P. 34(a) and Fourth Circuit Local Rule 34(a).  Oral argument will allow this Court to ensure the proper application of the Double Jeopardy Clause when defendants are charged with multiple conspiracy counts in the same indictment, and it would give the Court an opportunity to clarify the correct test for assessing multiplicitous conspiracy counts.  In addition, oral presentation would aid this Court's resolution of the fact-intensive issues in this case.

Respectfully Submitted,

*/s/ Erica Hashimoto*
Erica Hashimoto, Director
*Counsel of Record*

Salvatore Mancina
*Supervising Attorney*

Emily Webb
Daniel Reid
*Student Counsel*

Georgetown University Law Center
Appellate Litigation Program
600 New Jersey Ave. NW, Suite 306
Washington, D.C.  20001
(202) 662-9555
sm3866@georgetown.edu

Counsel for Appellant

Dated: November 14, 2022

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 8,919 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

Respectfully Submitted,

*/s/ Erica Hashimoto*
Erica Hashimoto, Director
*Counsel of Record*

Salvatore Mancina
*Supervising Attorney*

Emily Webb
Daniel Reid
*Student Counsel*

Georgetown University Law Center
Appellate Litigation Program
600 New Jersey Ave. NW, Suite 306
Washington, D.C. 20001
(202) 662-9555
sm3866@georgetown.edu

Counsel for Appellant

Dated: November 14, 2022

## CERTIFICATE OF SERVICE

I, Salvatore Mancina, certify that on November 14, 2022, I electronically filed the foregoing brief with the Clerk of the Court for the Fourth Circuit using the CM/ECF system, which will send notice of such filing to counsel of record in the above-captioned case.

Respectfully Submitted,

*/s/ Salvatore Mancina*
Salvatore Mancina
Counsel for Appellant
Georgetown University Law Center
Appellate Litigation Program
600 New Jersey Ave. NW, Suite 306
Washington, D.C. 20001
(202) 662-9555
sm3866@georgetown.edu

Counsel for Appellant